25 C.C.P.A.(Patents)

McCORMICK et al. v. PLUMSTEAD.

Patent Appeal No. 3905.

Court of Customs and Patent Appeals.
Feb. 28, 1938.

1000

Spencer Brownell, Jr., of Wilmington, Del., for appellants.

Frank S. Busser, of Philadelphia, Pa. (Busser & Harding and Hayward H. Coburn, all of Philadelphia, Pa., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an interference proceeding wherein appellants have appealed from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the Examiner of Interferences which awarded to appellee priority of invention as to all the counts in the interference.

The interference was originally between an application of appellants filed April 30, 1932, and a patent to appellee, issued November 3, 1931, No. 1,830,131, upon an application filed May 9, 1929. Fifteen counts were embraced in the interference, the corresponding claims for which were copied by appellants from appellee's said patent.

After the declaration of said interference, an application was filed by appellee for a reissue of his said patent, adding certain claims copied from appellants' application. Two of the added claims were added to the interference as counts 16 and 17, and the interference was redeclared.

Appellants contend that their said application is a continuation of an application filed by them on August 25, 1931, which last-mentioned application matured into a patent, No. 1,857,100, which was issued on May 3, 1932. Appellants claim that said last-named application was itself, in part, a continuation of an application filed by them on June 6, 1928.

The appeal before us includes all of the seventeen counts of the interference; but appellants have moved to dismiss the appeal as to all of the counts except those numbered 7, 8, 13, 14, 15, 16, and 17. This motion will be granted. Counts 7, 15, and 16 are illustrative of the remaining counts before us, and read as follows:

"7. The hereindescribed method of producing puffed pulp including treating substantially dry cellulosic fibrous pulp material in a kneader with caustic alkali solution of sufficient strength such as will produce a puffing of the pulp or curling of the fibres and in such volume of solution as to produce a resultant substantially non-fluid mass containing at least 10% of fibrous material, said resultant non-fluid mass *as treated* being of such density that there can be no free drainage, and washing the material substantially free from caustic alkali and saponified substances." (Italics ours.)

"15. A step in the method of producing puffed pulp by curling the fibers thereof, this step consisting in impregnating the substantially dry pulp with a caustic alkali solution, and *maintaining* the fluid content of the mass of pulp and solution in such limited amount that it will not exceed that required for producing a non-fluid mass." (Italics ours.)

"16. A process for producing puffed pulp which comprises making paper pulp by cooking wood chips in a pulp digester with caustic soda, and washing the pulp, passing a mixture of the pulp thus produced with caustic soda solution of mercerizing activity at a pulp consistency over 10% through a mixing apparatus, separating the caustic from the pulp, and returning the separated caustic to the pulp digester."

As indicated by the above-quoted counts, the invention in issue relates to a process for treating pulp material resulting in the manufacture of a highly crinkled or puffed pulp from which highly absorbent sheet material may be made.

Appellants' preliminary statements alleged, inter alia, conception, disclosure to others, and reduction to practice of the invention as set forth in counts 7, 8, and 13 to 17, inclusive, during September, 1925.

The preliminary statements of appellee alleged conception and disclosure to others of the invention as set forth in all of the counts in December, 1928, and reduction to practice during April, 1929.

Both sides took voluminous testimony.

The Examiner of Interferences held that, inasmuch as appellants' application was filed after the issue of appellee's patent, the burden was upon appellants to establish priority of invention as to all of the involved counts beyond a reasonable doubt. He further held that neither party had established conception or reduction to practice of the invention prior to their respective filing dates, and therefore, appellee being the senior party, he awarded priority of invention to him.

The Examiner of Interferences specifically held that the earlier application of appellants, filed June 6, 1928, and hereinbefore referred to, fails to support any of the counts before us, and consequently could not be relied upon by appellants for conception and constructive reduction to practice of the invention.

The Board of Appeals, in affirming the decision of the Examiner, held, in effect, that the invention was reduced to practice in March, 1929, without according to either party the benefit of such reduction to practice, and held that appellants had not definitely established by proof that they either conceived the invention or disclosed it to appellee prior to the filing date of appellee's application, May 9, 1929. The Examiner of Interferences had, in effect, held that said experiments did not result in a reduction to practice of the invention.

The Board of Appeals affirmed the holding of the Examiner of Interferences that appellants were not entitled to the benefit of the dates of appellants' earlier applications for conception and reduction to practice of the invention, and that the burden was upon appellants to establish priority of invention beyond a reasonable doubt.

Before considering the testimony, it is necessary to determine two questions; one, the proper construction of the counts, and the other the burden of proof resting upon appellants to establish priority of invention.

That both appellants' instant application and appellee's patent and reissue application support the invention set forth in the counts is conceded, but the construction of the counts is important as bearing upon the question of conception and reduction to practice of the invention by appellants.

The difference between the parties as to the construction of the counts arises from the use of the words "as treated" in count 7, hereinbefore quoted, which words also apply to counts 8 and 13, and the use of the word "maintaining" in count 15, hereinbefore quoted, which word is also included in count 14.

Both of the Patent Office tribunals held that the words "maintaining" and "as treated" are positive limitations, and cannot be ignored. The Board of Appeals in its decision stated:

" * * * Merely adding the pulp to the caustic soda solution, as stated at the top of page 3 of Exhibit No. 8, will not *maintain* the consistency despite the fact that the ingredients are well mixed as stated in lines 3 and 4, page 3 of this exhibit. Appellants insist that 'maintaining' in this connection means (page 6 of appellants' brief) that 'the initial ingredients of the mixture are not to be changed until the operation is complete.'

"As we view it, the effect of the word, 'maintaining,' in count 14 is that no matter how the ingredients are handled in the impregnator the liquid content of the mass is always and everywhere maintained so that the liquid will not at any time or place in the process exceed that required for producing a non-fluid mass. Plumstead describes this effect at the top of page 3 of his original specification or page 2, lines 16 et seq., of his patent. In other words, the *caustic solution is added* only in such quantities that a resultant substantially non-fluid mass will be produced."

The Examiner of Interferences, in his decision upon the motion of appellee to add counts to the interference as originally declared, stated that the process involved in the claims which later became counts 16 and 17 requires that the pulp be maintained at concentration above 10 per cent. substantially during all of the mixing or impregnating step.

Appellants contested this view of said Examiner and moved for a reconsideration of his decision. In his decision upon said motion the Examiner of Interferences stated: "In regard to the contention that these claims are not limited to a process in which the pulp is maintained at a concentration above ten per cent substantially during all the mixing or impregnating step, attention is directed to the limitations stated in the second sentence of page 2 of the decision, which support the opposed construction of these claims. The interpretation of these claims given in the decision is believed supported by the Plumstead patent (lines 9–21, page 2) and original claim 6 of the patented file. * * * "

The matter in appellee's patent referred to in the above quotation reads as follows: "In practicing this exemplification of my invention, substantially dry fibrous cellulose pulp, or raw material is delivered to an impregnating kneader 1 to which is also delivered caustic alkali solution of sufficient strength, say 7% to 24%, to cause a curling of the fibres of the pulp upon impregnation. The caustic alkali is added only in such quantities that a resultant substantially non-fluid mass will be produced, the mass containing at least 10% of fibrous material, the

remainder of the mass being caustic soda or caustic alkali solution."

Original claim 6 of appellee's original application, as it appears in the record, reads as follows: "6. The method of puffing paper pulp including the steps of treating substantially dry cellulosic fibrous pulp material with caustic alkali to produce a puffing, swelling, or curling of the fibres and a substantially non-fluid mass containing at least 10% of fibrous material, and subsequently forming the non-fluid, puffed fibrous mass into a sheet."

The Examiner having thus construed counts 16 and 17, which do not contain either the word "maintaining" or the words "as treated," it follows that, in his opinion, the counts of the interference which do contain such words, when similarly construed, are likewise supported by appellee's original application, as filed.

On October 3, 1931, appellee amended his original application in certain respects; one of such amendments reads as follows: "The invention primarily involves subjecting the substantially dry pulp to impregnation by a strong caustic solution in a suitable impregnator, wherein the liquid content of the mass will be limited in amount so that the mass will be maintained in a non-fluid condition."

Appellants, in their brief, with respect to this subject, state: "Counts 14 and 15 are couched in different terms than count 7; they call for a method of puffing pulp consisting in impregnating dry pulp with a caustic alkali solution and 'maintaining the liquid (fluid) content of the mass of pulp and solution in such limited amount that it will not exceed that required for producing a non-fluid mass.' Before discussing the meaning of these counts, the history of the quoted portion will be mentioned. It did not appear in the specifications or claims as filed but was introduced over two years later by an amendment under Rule 78 (Rec. pp. 80–83) which rewrote large portions of the specification and introduced new claims 19 and 20 (counts 14 and 15). No explanation accompanied that amendment. Since this language was not in the Plumstead case originally, it must be interpreted only in the light of the original disclosure and it is immediately apparent that counts 14 and 15 can be no more limited in meaning than count 7."

We are not convinced that the foregoing quoted amendment constituted new matter, and we agree with the Patent Office

tribunals that counts 14 and 15 require that the process be such that the ingredients are mixed in an impregnator wherein the mass is maintained as stated in the counts.

The word "maintaining" is not found in count 7, but it is there provided that the ingredients shall be treaded in a "kneader" producing a "resultant substantially nonfluid mass," and that, "as treated," the resultant nonfluid mass is of such density that there can be no free drainage.

We think the elements of count 7 above discussed are the equivalent of counts 14 and 15, containing the word "maintaining," and we so hold; and, as we understand its decision, that was the Board's view.

This construction of the counts is clearly disclosed in appellants' application in interference, wherein it is stated: "* * * The volume of liquor passing through the pipe 15 is adjusted so that a substantially non-fluid or high consistency mixture of pulp and caustic solution continuously passes through the apparatus."

These limitations are of very great importance in determining the question of conception and reduction to practice of the invention by appellants.

While counts in an interference are to be interpreted as broadly as their language will reasonably permit, express limitations can not be ignored. This we have declared so repeatedly that citation of authority is unnecessary.

With respect to the burden resting upon appellants to establish priority of invention, in view of our construction of counts 7, 8, 13, 14, and 15, we are clear that appellants are not entitled to the benefit of their earlier applications for conception and reduction to practice of the invention, for there is nothing therein that could support the limitations hereinbefore discussed.

This being true, and appellee's patent having issued before appellants' application was filed, it was clearly incumbent upon appellants to establish priority of invention beyond a reasonable doubt. White v. Syvertsen, 46 F.2d 364, 18 C.C.P.A., Patents, 897.

Appellants contend that a different rule prevails where the question of originality of invention is in issue, and cites our decision in the case of De Forest v. Owens, 49 F.2d 826, 18 C.C.P.A., Patents, 1424. It is true that certain statements were made in our opinion in that case which, isolated from the facts there in issue, would seem to

sustain appellants' contention. However, we have many times said this may not properly be done, but the connection in which expressions are made must also be considered.

In the De Forest Case we held that the relation of employer and employee existed between De Forest and Owens, and therefore the presumption was, under the circumstances of that case, that De Forest was the inventor, and it was incumbent upon Owens to produce satisfactory evidence to the contrary.

■ While the burden of proof was originally upon De Forest to establish priority of invention, that burden was met when, in connection with other facts in the case, it was established that the relation of employer and employee existed between the parties. There was no dispute upon the question of law there involved, and we did not think it necessary to state an elementary rule of law concerning which there was no dispute, viz., that the burden is always upon the junior party to establish priority of invention, and that burden is not sustained until facts appear prima facie establishing priority of invention in the junior party, in which case the senior party must go forward with proof to overcome the prima facie case made by the junior party.

In the case of Herst v. Nielsen, 55 F.2d 430, 431, 19 C.C.P.A., Patents, 883, we said: "The sole and only question is one of originality. Nielsen's parent application having been filed before that of Herst, the burden is upon Herst of establishing his case, and, unless this burden is fully discharged, the senior applicant must prevail. Hunter v. Stikeman, 13 App.D.C. 214."

This brings us to a consideration of the testimony in the case.

■ Appellee invokes the rule that, ordinarily, concurring decisions of the Patent Office tribunals will not be disturbed, unless it appears that they are manifestly wrong.

Appellants call our attention to our decision in the case of Bryson v. Clarke, Patent Appeal No. 3846, 92 F.2d 720, 722, 25 C.C.P.A., Patents, ——, wherein we said: "At the outset we would observe that appellee here invokes the rule that, ordinarily, concurring decisions of the Patent Office tribunals will be accepted by this court as conclusive, except where it appears that such decisions are manifestly wrong. This rule has been repeatedly applied by us, and it is applicable to questions of fact, and to technical and engineering questions, but it of course has no application to pure questions of law, and ordinarily it does not apply to construction of claims and counts when technical questions pertaining to such claims or counts are not involved. In the latter class of cases, while the reasoning of the Patent Office tribunals upon which their conclusions are based should be carefully considered, their decisions based thereon should in no wise be considered as controlling our decision."

There is no conflict between what we stated in the above quotation and previous decisions of this court. In the case last cited, we merely fully expressed what has always been understood in considering concurring decisions of the Patent Office tribunals.

■ It appears that appellants' application has been assigned to the Celastic Corporation, which, we gather, is a subsidiary of E. I. du Pont de Nemours & Co.

It further appears that appellee's application was assigned to Jessup & Moore Paper Company, and the patent issued thereon so states.

The appellant Schwartz was, at all of the times hereinafter mentioned, employed as a research chemist by said du Pont Company, and had been so employed since the year 1917. He testified that, some time prior to September 14, 1925, he began research work upon the general subject-matter of the involved invention, and that on or about September 14, 1925, he, in conjunction with appellant McCormick, conceived certain elements of the invention here in issue.

The appellant McCormick was also employed by the du Pont Company in its development department, and had been so employed since 1916; his work being confined to commercial and technical research problems. He testified that he began research work upon the general subject of the involved invention in December, 1924, and that in September, 1925, he and his co-appellant, Schwartz, jointly conceived certain elements of the invention set forth in the counts here involved.

The appellee is, and at all times herein mentioned was, an employee of the Jessup & Moore Paper Company, and had been in their employ for sixteen years at the time of the taking of his testimony. He testified that, at the time his testimony was taken, in March, 1935, he was the secretary of said company; that he had been assistant superintendent and superintendent of the

Delaware Pulp Mills, owned by said company, and had been manager of manufacture of two pulp mills and three paper mills.

All of the parties hereto seem to have been highly qualified in the general art of pulp and papermaking.

The Lindsay Paper Company, according to the testimony, was interested in the subject-matter of the involved invention; said company being the sole licensee of the Celastic Corporation for the manufacture and sale of a product known as "Krafelt," for which the Celastic Corporation had a patent; and said paper company, under an agreement with the Celastic Corporation, was to become the sole licensee of any subsequent patents issued to its licensor.

The controversy before us extends over a period of time from September, 1925, to May 9, 1929, when appellee filed his application for patent.

We will first consider the period from September, 1925, to December, 1928. In this period the question of conception of the invention by appellants is involved. The subsequent period involves the question of originality. The events which occurred during this first period require very little discussion, for, aside from the great burden upon appellants to establish prior conception of the invention, we are convinced that, with the construction of the counts given by the Patent Office tribunals, and approved by us, there is no evidence whatever that appellants conceived the invention set forth in counts 7, 8, 13, 14, and 15 prior to December, 1928.

As we are clear upon this point, we do not deem it necessary to review the evidence respecting the activity of appellants during this first period.

As stated above, the period subsequent to December, 1928, involves the question of originality, for it is the contention of appellants that, in December, 1928, they disclosed the invention to appellee, while appellee, denying this, contends that he disclosed the invention to appellants somewhat later.

It is agreed that the parties hereto met at the Rockland Mill of appellee's assignee at Rockland, Del., in December, 1928. At this meeting there were present, in addition to the parties hereto, Mr. David Lindsay, Jr., representing the Lindsay Paper Company, and Messrs. Wiehenmayer and Tong, representing appellee's assignee. The purpose of the meeting was to discuss a procedure for puffing pulp with caustic soda solution, with a view to its subsequent manufacture by appellee's assignee. It is the contention of appellants that at this meeting the invention, as set forth in the involved counts, was disclosed to appellee. Each of the appellants so testified, as did the witness David Lindsay, Jr. This disclosure is denied by appellee and by the witness Wiehenmayer. The witness Tong did not directly deny that such a disclosure was made, but he did testify to a disclosure made by appellants, which disclosure would not meet the counts here involved.

Appellee testified that at this conference in December, 1928, he conceived the invention here involved, and shortly thereafter disclosed it to Mr. Wiehenmayer, and a little later to Mr. Eugene W. Fry, president of appellee's assignee.

The witness Wiehenmayer corroborated appellee's testimony as to the disclosure made to him, and Fry corroborated appellee's testimony as to appellee's second disclosure made to him, Fry.

The witness Wiehenmayer further testified that appellee was instructed not to reveal to the Lindsay Paper Company or its representative the invention as set forth in the involved counts, but that later, in February or March, 1929, appellee was authorized to make a disclosure of his proposed process to representatives of the Lindsay Company, and appellee testified that such disclosure was made to the appellant Schwartz and the witness David Lindsay, Jr. This was denied by Schwartz and Lindsay.

We are not satisfied, however, that the disclosure by appellee as testified to embraced all of the elements of the counts in issue, nor are we satisfied that the disclosure to appellee, as testified to by appellants and the witness Lindsay, embraced all of the elements of the counts here involved, as they are construed by us.

Finally, however, tests were made at the Kenmore Mill of appellee's assignee, which tests, the Board of Appeals apparently held, carried out the process set forth in the counts and constituted a reduction to practice of the invention, although the Examiner of Interferences was of the opinion that this had not been established.

However, both tribunals agree that, whatever was done at the Kenmore Mill, appellants had not established priority of the invention involved.

The Examiner of Interferences in his decision stated:

"Therefore as is usual the circumstances which are important in an originality case are asserted by one party and denied by the other. However it is clear that one of the most important circumstances of the case is not established by either party and especially the junior party, because neither has established that he had at least a conception of the invention in issue prior to the admitted meeting in December of 1928. Since the meeting of the parties is not denied it is certain that there was opportunity for derivation from one party by the other. But it can not be concluded from the testimony on behalf of McCormick and Schwartz that they have sustained the burden resting upon them in establishing a prior conception by them nor a derivation of the invention in issue from them by the party Plumstead.

"Likewise it can not be concluded from the testimony on behalf of the party Plumstead, even though the testimony on his behalf does establish that he conceived the idea of thick pulp treatment in a Lannoye pulper, that he has established a derivation of the invention in issue from him by the junior party McCormick and Schwartz nor that he has established a conception or reduction to practice prior to his constructive reduction to practice of May 9, 1929."

The Board of Appeals in its decision stated:

"The Kenmore Mills Operation.

"The substitution of the Lannoye pulper for the beaters seems to be preferred in Exhibits 26 and 28. Exhibit 25, dated March 16, 1929, is the first to indicate a proper relation between the flow rate of the caustic solution and the pulp as 7.5 parts of solution to one part board weight of pulp. The examiner states, however, that it does not conclusively appear therefrom whether the suggestion as to the consistencies was by Plumstead or by McCormick and Schwartz. We believe that whatever presumption exists is in favor of Plumstead whose name appears on the Schwartz notebook, page 179, the run having been made at the mill of the Jessup and Moore Company. David Lindsay's name also appears on the notebook leaf and he testified that Schwartz supervised the feeding of the pulp and caustic solution to the pulper. However, we make no presumption as to the effect of Exhibit 25, since there is nothing of record to definitely relate the mode of operation there indicated to either party.

"As pointed out by appellants, the mere variation on the consistency of the output from the pulper does not indicate that the non-fluid condition was not maintained. On the contrary, we believe it was substantially maintained, but we are not satisfied, from the evidence before us that the process was conceived by appellants more than by Plumstead."

Considering that the burden was upon appellants to establish priority of invention beyond a reasonable doubt, we do not deem it necessary to discuss the testimony further. The testimony in behalf of the respective parties is irreconcilable, and it is difficult to believe that the conflict in testimony was the result of faulty recollection or honest mistake. True, there are circumstances which each party points out as indicating that the other is culpable. Appellants point out the failure of appellee to call as a witness one Currier, an employee of appellee's assignee, who, according to the testimony, could have thrown much light on the case, and also the failure to produce records of the test at the Kenmore Mill. On the other hand, appellee points out that on August 25, 1931, an application was filed by appellants relating to the same subject, which application did not disclose the involved invention, and that it was not until after appellee's patent issued that appellants filed any application to secure patent protection for the invention here involved.

When the burden is upon a party to establish priority of invention beyond a reasonable doubt, we are not permitted to decide the case upon mere probabilities that one upon whom the burden rests is the original inventor, if such probabilities could be said to exist.

Appellants make some contention that, by a certain contract existing between the Lindsay Paper Company and appellee's assignee, a fiduciary relationship was created between the parties, and that, if appellee did make any improvements in appellants' process, they should inure to appellants.

By the contract referred to, the Lindsay Paper Company, as licensee under a patent owned by the Celastic Corporation, which patent is not here involved, granted to the Jessup & Moore Paper Company a sublicense, under certain conditions named in the contract, to manufacture puffed paper and pulp under said patent. The contract contains the following provision: "15. Any improvement devised solely by the Licensee shall remain its property, but the Licensor

herein shall have the right and privilege for itself alone, during the life of any patent obtained or applied for, to use and employ said improved process."

Without further discussing the details of said contract, we state that we find nothing therein, or in the conduct of the parties as shown by the record, to warrant a holding that any invention made by appellee should inure to the benefit of appellants.

We next come to a consideration of counts 16 and 17. The Examiner of Interferences held that these counts, like 14 and 15, are limited to a process in which the pulp is maintained at a concentration above 10 per cent. substantially during all of the mixing step. The Board of Appeals did not specifically discuss this point, but there was a general affirmance of the decision of the Examiner of Interferences.

We are in accord with the holding of the Examiner of Interferences, and impliedly by the Board, with respect to the construction of these counts. It follows that, appellants not having established priority of invention as to the counts hereinbefore discussed, they have not established priority as to counts 16 and 17.

We have given careful consideration to other minor points raised by appellants' counsel, but find nothing therein which could affect our conclusion. Upon the entire record we must conclude, as did the Patent Office tribunals, that appellants have failed to sustain the burden resting upon them.

The motion of appellants to dismiss the appeal as to counts 1 to 6, inclusive, and 9 to 12, inclusive, is granted. The decision of the Board of Appeals as to the remaining counts is affirmed.

Affirmed.